EMILY LEE *v.* JOSEPH W. DONNELLY.

February Term, 1921.

Present: WATSON, C. J., POWERS, TAYLOR, and MILES, JJ., and FISH, Supr. J.

Opinion filed May 3, 1921.

*On Defendant's Motion for Directed Verdict Evidence Viewed Favorably to Plaintiff—Duty of One Backing Automobile in Highway to Look—Question Whether Driver Negligent in Turning Car to Left to Pass Parked Car for Jury—Right to Assume That Parked Car Will not Move—On Conflicting Evidence Question Is for Jury—Right of Person Approaching Car Parked on Same Side of Street to Pass on the Left— Sudden and Unexpected Danger—Degree of Care Required*

*—Question of Speed for Jury on Conflicting Evidence—*
*Automobile Driver's Negligence not Imputed to Guest.*

1. On reviewing defendant's motion for a directed verdict, the evidence must be considered in the light most favorable to the plaintiff.

2. In an action to recover for an injury alleged to have been caused by defendant's negligence in suddenly backing his automobile without warning, on the evidence, the trial court erred in directing a verdict for the defendant.

3. Under G. L. 4705, Subd. X., it is the duty of a person, in backing his automobile in a public highway, not only to look in all directions from which a traveler might be expected to approach him before beginning to back, but to continue looking while backing.

4. Where the driver of the car in which plaintiff was riding turned to the left to pass defendant's car whch was parked on the right-hand side of the road ahead, and later turned farther to the left to avoid a collision, whereby he went over an embankment, when defendant suddenly backed his car without warning, the question whether he was negligent in turning to the left so far as he did was for the jury; there being evidence that he could not have passed defendant's car on the right, and could not have passed it on the left without turning to the left the second time.

5. The plaintiff's driver, after giving notice of his approach by sounding his horn when about one hundred feet from defendant's car, and failing to hear or see any signs of an intention to move the car, had the right to presume that it would remain as it was until he had passed it.

6. It was for the jury to determine on conflicting evidence whether the defendant gave warning before starting to back his car, and whether plaintiff's driver gave warning on approaching the defendant.

7. In passing a car parked on the side of a street, a person approaching it on that side has the right to pass it on the left, if the street in front of him on that side is of sufficient width and clear of obstructions, and the passage can be made safely.

8. The Court will take judicial notice of the custom of automobile drivers, under such circumstances, to pass other cars on the left.

9. When an automobile driver is beset with a sudden and unexpected danger engaging his whole attention and demanding instant action, all the law requires is that he act as a careful and prudent man would reasonably act under like circumstances; and whether he so acted is a jury question.

10. The acts upon which the defendant charged plaintiff's driver with contributory negligence being the same as those charged to the plaintiff, the question of her contributory negligence was controlled by the same evidence.

11. There being conflicting evidence as to whether plaintiff's driver was running his car at a rate of speed exceeding ten miles an hour in an incorporated village at the time of the accident, evidence of the excessive rate of speed cannot avail the defendant on his motion for a directed verdict; that being a jury question.

12. The negligence of an automobile driver on a pleasure trip cannot be imputed to a guest of the owner of the car, who took no active part in the course it took, did not attempt to control its management, and did not influence the driver in any way.

ACTION OF TORT for negligence. Plea, the general issue. Trial by jury at the September Term, 1920, Rutland County, *Chase, J.*, presiding. At the close of the evidence the Court directed a verdict for the defendant. Judgment on the verdict. The plaintiff excepted. The opinion states the case.

*Lawrence, Lawrence & Stafford* and *Asa S. Bloomer* for the plaintiff.

*Walter S. Fenton* for the defendant.

MILES, J. This is an action of tort to recover for an injury alleged to have been caused by the negligence of the defendant in the operation of an automobile. At the close of all the evidence, on motion of the defendant, a verdict was directed in his favor, to which the plaintiff excepted, and the case comes here on that exception. The transcript of the evidence is referred to in the bill of exceptions and made controlling as part thereof, as to the tendency of the evidence.

The grounds of the motion were: (1) That there was no evidence in the case tending to show that the defendant was

guilty of negligence; (2) that the plaintiff herself was guilty of contributory negligence; (3) that one Frank A. Peets, the driver of the car in which the plaintiff was riding when injured, was guilty of contributory negligence which was imputable to the plaintiff, and (4) that Peets was operating his car at the time of the accident at a rate of speed exceeding ten miles an hour in an incorporated village, and therefore was *prima facie* negligent.

[1] The evidence was conflicting, but viewed in the light most favorable to the plaintiff, as it must be, it tended to show that the injury to the plaintiff occurred on a street in the northern part of the incorporated village of Springfield, Vermont, at a point just north of where the entrance to the "Fellows Gear Shaper Shop Bridge," so-called, connects with that street. The plaintiff at the time of the injury was riding with her daughter and granddaughter, in an automobile owned and driven by Peets, her son-in-law. As the party approached the entrance to the bridge, and when at a distance of three hundred feet or more from it, they observed an automobile parked on the right-hand side of the street, opposite the entrance of the bridge. The street on which Peets' car was moving ran practically north and south, and the party with whom the plaintiff was riding was going north at the time of the accident. When Peets first saw the defendant's car it was standing still, and there was nothing about it indicating that it was to be moved, and when within about one hundred feet of it Peets sounded his horn, and, noticing no movement of the car, he soon thereafter turned his car to the left for the purpose of passing the defendant's car, and proceeded on the left side of the road until he was within about ten feet of the defendant's car, when the defendant of a sudden, and without warning, started to back his car towards Peets' car at a rapid rate of speed. Peets, in attempting to avoid a collision, at once applied the foot brake, and turned his car further to the left, and by so doing barely escaped a direct collision with the defendant's car; but before he could turn his car back into the road he came in contact with the railing on the northerly side of the entrance of the bridge, and went over the embankment on the left side of the street, causing the injury of which the plaintiff complains.

[2] On this evidence alone we cannot say, as a matter of law, that it had no tendency to show the defendant was negligent,

and, when taken in connection with his own testimony, we have no hesitation in saying that it does have such tendency. On direct examination he testified: "I came out and cranked up the car, got in, looked about to see if any cars were in sight; saw no cars in sight, I backed up, sounded my horn and backed up, and I was looking to the north as I was backing to the Gear Shaper bridge, so if a car came from North Springfield I wouldn't back into it. I was backing from the right to go out on the other side." Further along in his direct examination he testified: "I backed the car only a short distance when I heard a horn, and I looked and saw a car coming, and I put in my emergency brakes and stopped, for I didn't know which way the car was coming." From his own testimony it does not appear that he saw the approaching car before he had applied his emergency brakes, though the car could have been seen for a distance of three hundred feet or more, if he had looked in the direction from which the car was approaching him. On cross-examination he testified as follows: "Q. And you say your car had traveled ten or eleven feet going back, and this car, the indication you had of it was that it was immediately behind you, or in the immediate vicinity of where you were?" He answered: "It was." He was further asked: "Had you looked to the south as you did to the north as you started up, and as you were backing, there isn't any reason that you know of, why you couldn't have seen that car approaching?" He answered: "No."

[3] G. L. 4705, subdivision X, provides: "A person shall not turn or back a vehicle of any kind in a public highway without taking due and reasonable care to avoid injury to other users of the highway in so doing. A vehicle shall not be driven in a backward direction farther than is absolutely necessary to avoid accident, or to proceed on its way." Under this statute it was the duty of the defendant to make such use of his eyes and ears before and while backing as a careful and prudent man would make in like circumstances. This, as the evidence tended to show, he did not do. Mr. Peets' car was approaching him in plain view for about twenty seconds, if moving at the rate of speed indicated by the plaintiff's evidence, before the defendant began to back his car. It was not enough for him to look in one direction. Common prudence and regard for the safety of others using the highway required him to look in all directions from

which a traveler might be expected to approach him, not only before he began to back, but while he was in the act of backing. He had no right to assume that the road was clear in either direction; but he was bound to be vigilant, watchful, and to have anticipated and expected the presence of others.   2 R. C. L. 1184, par. 19.

[4]  The defendant contends that, though his act may have been negligent, it was not the proximate cause of the plaintiff's injury; that that resulted from the negligence of Peets in turning to the left so far as he did; that he was not compelled to turn to the left the second time from anything resulting from the act of backing the car, and that, if he had proceeded along in a straight line after he first turned to the left, no accident would have happened; that, if he had not turned to the left at all, he could have passed the defendant's car on the right-hand side of the street without accident.   On the undisputed evidence the street where the defendant's car was parked did not exceed twenty-five feet in width, and the defendant's car was about ten feet in length.   The defendant's evidence tended to show that he did not back his car past the center of the street.   If this were true, Peets' car could not have passed the defendant's car on the right, for there would not be sufficient room for so doing.   If the fact was as the plaintiff's evidence tended to show, that the defendant's car brushed the rear guard of Peets' car as he passed the defendant, then it is not true that Peets could have passed the defendant's car without turning to the left the second time. Here clearly was a question for the jury.

[5, 6]   The defendant argues that Peets' negligence was the cause of the accident; that it would not have happened if he had not turned to the left at all and had kept to the right of the street where he belonged.   But we do not think the evidence, considered in the light most favorable to the plaintiff, as a matter of law, justifies the conclusion.   As we have seen, the evidence tends to show that Peets saw the defendant's car parked at the extreme edge of the street on his right, when he was three hundred or more feet away, with no apparent indication that it was to be moved, and when within about one hundred feet of it he sounded his horn.   Not observing anything denoting that the car was to be moved, he then turned to the left, with the evident intention of passing the defendant's car on that side of the street.   This was the proper thing for him to do.   He had the

right to presume, after he had given notice of his approach and failing to hear or see any signs of an intention to move the car, that it was to remain as it was until he had passed it. The evidence was undisputed that there was sufficient room to the left of the defendant's car for the safe passage of Peets' car, and that the street was clear on that side, and would have remained so, if the defendant had not moved his car back; but the evidence of whether the defendant did give warning before starting to back his car, and whether Peets gave warning, as the plaintiff claims, on approaching the defendant, was conflicting. That question therefore was for the jury. If the plaintiff's claim in this respect is according to the fact, Peets was where he had a right to be when he turned to the left the first time.

[7, 8]   In passing a car parked on the side of a street, a person approaching it on that side has the right to pass it on the left, if the street in front of him on that side is of sufficient width and clear of obstructions, and the passage can be made safely. Otherwise a car lawfully parked at the side of a street would obstruct all travel approaching it on that side and prevent its further progress until the car was moved.   The well known custom, of which we take notice, is in accord with this holding.

[9]   But the defendant argues that, if Peets was not negligent in turning to the left the first time, he was the second time he turned.   Beset as Peets was, as the plaintiff's evidence tends to show, with a sudden and unexpected danger engaging and concentrating his whole attention at the time upon the manner of avoiding it, his conduct, in determining whether he acted as a careful and prudent man, should not be measured by the rule applied to a man under no excitement with time to deliberate. In such circumstances as Peets was placed, he had no time to deliberate.   He had to act instantly, and, if he acted in the light of all the surrounding circumstances as a careful and prudent man would reasonably act under like circumstances, he did all the law required of him.   Whether he did this was a question for the jury. *Benedict* v. *Agricultural Society,* 74 Vt. 91, 52 Atl. 110.

[10]   The claim of the defendant that the plaintiff herself was personally guilty of contributory negligence is met by what we have already said with reference to the defendant's claim that Peets was negligent; for the acts upon which the defendant charges Peets with contributory negligence are the same as those

charged to the plaintiff; and the evidence which we hold has a tendency to show that Peets was not guilty of contributory negligence has the same tendency to show that the plaintiff was not guilty of such negligence, and should have been submitted to the jury.

[11]    The contention of the defendant that the plaintiff cannot recover because the evidence tends to show that Peets was running his car at a rate of speed exceeding ten miles an hour in an incorporated village at the time of the accident cannot be sustained. It is true that some of the evidence in the case did tend to prove that fact; but it is equally true that there was other evidence in the case that Peets' car was running at that time at a rate of speed not exceeding ten miles an hour. In this state of the evidence, where it is to be taken most strongly against the defendant and in favor of the plaintiff, the fact that there was evidence tending to show that Peets was within the law makes the fact that there was evidence tending to show the contrary of no avail to the defendant on a motion for a directed verdict. Such a state of the evidence shows a question for the jury.

[12]    Our holdings already made makes it necessary to reverse the case; but as it is necessary to send the case back for a new trial, we think best to pass upon the question of whether the negligence of Peets, if such should be found, could be imputed to the plaintiff, with the evidence standing as it did on the trial below. Viewed in the light most favorable to her, the evidence tended to show that she was an invited guest on a pleasure trip, and that she took no active part in the course it was to or did take, nor did she attempt to control the management of the car in which she rode, nor influence the driver in any way. The theory of the law which makes each person engaged in a common purpose at the time of an injury resulting from the negligence of some outside person responsible for the neglect of any of his associates contributing to the injury is that each was the agent of the other, and so responsible for the consequences resulting from the acts of the others, or any of them. *Howe* v. *Central Vermont Ry. Co.,* 91 Vt. 485, 101 Atl. 45; *Wentworth* v. *Waterbury,* 90 Vt. 60, 96 Atl. 334; *Koplitz* v. *City of St. Paul,* 86 Minn. 373, 90 N. W. 794, 58 L. R. A. 74. If the plaintiff was a guest of Mrs. Peets and nothing more on the trip when the accident occurred, Peets was not her agent, and therefore she was not

liable for his negligence. In these circumstances it cannot be said that Peets' negligence, if any, was imputable to the plaintiff.

*The judgment is reversed, and cause remanded.*